IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN REDDEN<br><br>*Plaintiff,*<br><br>*v.*<br><br>THOMAS LAFFERTY,<br>OVERTON COUNTY<br><br>*Defendants.* | Case No.<br><br>JURY DEMANDED |

# COMPLAINT

Comes now the Plaintiff, JOHN REDDEN, by undersigned counsel and for his complaint against the Defendants states the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

5. Plaintiff John Redden is an adult resident of Overton County, Tennessee.

6. Defendant Thomas Lafferty is a deputy sheriff of the Overton County Sheriff's Department.

7. Defendant Overton County is a political subdivision of the State of Tennessee and is the employer of Defendant Thomas Lafferty.

## FACTUAL ALLEGATIONS

8. On September 2, 2022, John Redden was driving his vehicle with his dog along Standing Stone Highway on his way to buy dog food at the Dollar General.

9. As he was traveling down the road, a car pulled out in front of him from the Valero gas station.

10. That portion of Standing Stone Highway has a checkered line where passing is legally permitted.

11. Redden passed the slow-moving vehicle that had just pulled out of the Valero gas station without exceeding the speed limit.

12. Afterwards, Redden noticed a police vehicle pass by him travelling the opposite direction.

13. That police vehicle was operated by Deputy Lafferty.

14. Deputy Lafferty made a U-turn in the road, activated his blue lights, and turned around to apprehend Redden.

15. Redden continued to the Dollar General store and parked in the same place he usually parks.

16. Deputy Lafferty stopped the patrol vehicle behind Redden with his blue lights activated.

17. Deputy Lafferty exited his vehicle and approached Redden's vehicle.

18. As Lafferty arrived to the side of Redden's vehicle, Redden began to exit the vehicle.

19. Redden said words to the effect of "how can I help you officer?"

20. Deputy Lafferty steadily walked toward Redden and responded with words to the effect of "You know what you did."

21. Redden did not "know what he did" because he had not violated any law.

22. Taken aback by Deputy Lafferty's immediate hostility, Redden responded with words to the effect of "I didn't do anything wrong; I know the laws." The laws Redden referred to were traffic laws, with which Redden was intimately familiar based on his years-long career as a commercial vehicle operator.

23. Deputy Lafferty then said words to the effect of "I'm the law and you better shut the fuck up."

24. Redden responded with words to the effect of "According to the bill of rights, I have free speech," criticizing Lafferty's conduct.

3

25. Deputy Lafferty again says words to the effect of "Shut the fuck up."

26. Redden then responded with words to the effect of "I know I have rights, please call your supervisor."

27. Redden heard a response from Lafferty's radio indicating that another officer would arrive in a few minutes.

28. Deputy Lafferty verbally commanded Redden "put your hands on the car," because Redden was under arrest.

29. Redden complied with Lafferty's command and placed his hands on the hood of his vehicle.

30. As soon as Redden looked away from Deputy Lafferty, he grabbed and slammed Redden to the ground. At this time, Lafferty had no probable cause to arrest Redden; Redden posed no threat to Lafferty or any other person; and Redden was not actively resisting arrest.

31. Redden's head hit the ground forcefully.

32. Lafferty stomped and kicked Redden's body while he was on the ground.

33. Redden began yelling for anyone to help and for anyone to record the incident.

34. While lying on the ground, Redden did not resist arrest and did not present any danger to Lafferty.

35. Lafferty handcuffed Redden while pinning him to the ground.

36. Lafferty pulled out his taser and tased Redden several times with the intent to inflict pain and suffering on Redden, despite Redden being handcuffed.

37. The electrocution and assault caused Redden to involuntarily convulse and yell out for any person who may be nearby to record the events.

38. In order to give a false impression to anyone who may be watching the incident, Lafferty yelled "stop resisting!" as he continued to tase Redden.

39. Eventually, another deputy arrived on the scene while Lafferty was still on top of Redden.

40. After the other officer arrived, Lafferty got off Redden's body and proceeded to charge Redden with Disorderly Conduct, Resisting Arrest, and Failure to Exercise Due Care.

41. Lafferty then contacted Redden's wife, Elizabeth Redden, on the phone. He told her that he would shoot the dog if she did not come and get it.

42. At the preliminary hearing on Redden's criminal charges, Lafferty made several materially false statements, including but not limited to:

   a) Falsely testifying that Redden passed a vehicle on Standing Stone Highway in an unsafe manner.

   b) Falsely testifying that Redden attempted to walk away from Lafferty and was two to three feet in front of the vehicle when Lafferty told Redden that he was not free to go.

   c) Falsely testifying that, at the time he slammed Redden to the ground, it was "the only thing [Lafferty] could do."

   d) Falsely testifying that, while pinned on the ground underneath Lafferty, Redden actively resisted.

e) Falsely testifying that Redden was "yelling and cussing" in a manner sufficient to provide a legal basis for a criminal charge of disorderly conduct, despite being unable to remember a single word Redden uttered during the encounter.

43. Following the preliminary hearing on February 2, 2023, the Overton County General Sessions Court dismissed the charges of Disorderly Conduct and Failure to Exercise Due Care.

44. While the General Sessions Court found (based on Lafferty's false testimony) that probable cause for resisting arrest existed, the Court noted that the underlying arrest was illegal.

45. The Overton County Grand Jury never indicted Redden on the resisting arrest charge.

46. At no time on September 2, 2022 did Redden commit any offense in violation of the laws of the City of Cookeville or the State of Tennessee.

47. Lafferty had no legal cause to justify the stop, detention, and arrest of Plaintiff Redden or to institute criminal charges against him.

48. Lafferty has been the subject of repeated complaints by citizens concerning his misconduct and excessive force exercised against citizens during traffic stops, yet Overton County took no action prior to Redden's arrest to investigate or protect the public from Lafferty.

### DAMAGES

49. As a direct and proximate result of the Defendants' violations of his

federally protected rights, Plaintiff has suffered:

    a) Pain and suffering;

    b) Physical and mental injuries;

    c) Pecuniary damages including past and future medical expenses;

    d) Loss of enjoyment of life; and

    e) Serious mental suffering and emotional distress.

50. Based on the intentional and reckless misconduct, Plaintiff Redden requests an award of punitive damages against Defendant Lafferty.

### COUNT 1 - UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983

51. When Lafferty initiated the traffic stop on Redden's vehicle, he did so with neither reasonable suspicion of criminal activity nor probable cause to support a traffic violation. Therefore, the traffic stop violated the Fourth Amendment's prohibition against unreasonable seizures.

### COUNT 2 - RETALIATORY ARREST IN VIOLATION OF THE FIRST AMENDMENT
### 42 U.S.C. § 1983

52. When Lafferty ordered Redden to place his hands on the car and submit to arrest, he did so in retaliation for Redden's exercise of his protected First Amendment right to criticize the police during a traffic stop. Lafferty did not have probable cause to arrest Redden. Therefore, Lafferty violated Redden's First Amendment rights when he arrested Redden in retaliation for protected speech.

### COUNT 3 - UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT– EXCESSIVE FORCE
### 42 U.S.C § 1983

53.     When Lafferty initially slammed Redden to the ground, the force used was objectively unreasonable under the circumstances and in violation of the Fourth Amendment's prohibition against unreasonable seizures.

### COUNT 4 - UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT – EXCESSIVE FORCE 42 U.S.C § 1983

54.     When Lafferty stomped and kicked Redden while he was on the ground, the force used was objectively unreasonable under the circumstances and in violation of the Fourth Amendment's prohibition against unreasonable seizures.

### COUNT 5 - UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT – EXCESSIVE FORCE 42 U.S.C § 1983

55.     When Lafferty tased Redden several times while he was on the ground, the force used was objectively unreasonable under the circumstances and in violation of the Fourth Amendment's prohibition against unreasonable seizures.

### COUNT 6 - MUNICIPAL LIABILITY – DEFENDANT OVERTON COUNTY

56.     The violations of plaintiff's constitutional rights under the First and Fourth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant Overton County, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a) Legal cause to stop, detain, arrest, and criminally charge a citizen;

b) The use of force by sheriff's deputies;

c) The proper exercise of police powers, including but not limited to the making of an arrest, the use of force, and the bringing of criminal charges;

d) The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

e) The failure to identify and take remedial or disciplinary action against sheriff's deputies who were the subject of prior civilian or internal complaints of misconduct;

f) Sheriff's deputies' use of their status as sheriff's deputies to employ the use of force or to achieve ends not reasonably related to their police duties;

g) The failure of sheriff's deputies to follow established policies, procedures, directives, and instructions regarding arrests, the use of force, and the institution of criminal charges under such circumstances as presented by this case;

h) The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Overton County sheriff's deputies;

i) The failure to provide any training whatsoever on the First Amendment

rights of subjects during police encounters, despite the obvious risks inherent to this failure; and

j) The practice among Overton County sheriff's deputies of instituting false charges against individuals whom the officers have subjected to unlawful force with the intention of precluding such individuals from instituting civil claims.

## COUNT 7 - COUNTY LIABILITY FOR SHERIFF'S MISCONDUCT
## TENN. CODE ANN. § 8-8-302

57. Overton County is vicariously liable for the misconduct of its Sheriff's deputies for their actions within the scope of their employment pursuant to Tenn. Code Ann. § 8-8-302.

58. Deputy Lafferty was acting as a deputy of the Overton County Sheriff's Department during all times referenced in the complaint, and thus Overton County is liable up to the amount of the county sheriff's bond.

### REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff John Redden requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered;

IV. That Plaintiff Redden be awarded nominal damages;

V. That Plaintiff Redden be awarded compensatory damages in the amount of four hundred thousand dollars;

VI. That Plaintiff Redden be awarded punitive damages against Defendant Lafferty in an amount deemed appropriate by a jury;

VII. That Plaintiff Redden be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII. For pre- and post-judgment interest on all damages awarded;

IX. For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley B. Clark*
Wesley Ben Clark, #32611
Frank Ross Brazil #34586
Paul D Randolph #39667
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
paul@brazilclark.com